**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| AMR A. ALI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No. 1:06cv258** |
| | ) | |
| LEWIS BARLOW, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**<u>MEMORANDUM OPINION</u>**

At issue in this habeas corpus petition is the legality of petitioner's post-removal order detention.  Petitioner is a Major in the Egyptian Army who came to the United States to attend a U.S. Army course and then remained here after the expiration of his A-2 non-immigrant visa.  Although ordered removed, petitioner won relief from removal to Egypt under Article 3 of the United Nations Convention Against Torture ("CAT"), on the ground that the government of Egypt would torture him as an Army deserter.[1]  Petitioner remains in custody while the Immigration and Customs Enforcement ("ICE") branch of the Department of Homeland Security ("DHS") endeavors to identify another country to which petitioner can be removed.

In the circumstances, petitioner seeks release on bond pending his removal, which release respondents oppose.  Respondents argue that petitioner's habeas claim, under 8 U.S.C. § 2241,

---

[1]Omnibus Consolidation and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822; Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (INS Feb. 19, 1999) (codified at 8 C.F.R. § 1208.16-1208.18 (2005)).

1

must be dismissed because it is unexhausted, unripe, and meritless.  Accordingly, the questions

presented are:

> (i)     Whether petitioner failed to exhaust his administrative remedies;
>
> (ii)    Whether petitioner's claim is ripe, given that he has not been in post-removal order detention for six months, the presumptively reasonable period under *Zadvydas*;[2] and
>
> (iii)   Whether, even assuming ripeness, petitioner can show, as required by *Zadvydas*,[3] that there is no significant likelihood of removal in the reasonably foreseeable future.

## I.

The material facts are essentially undisputed.  On June 27, 2004, petitioner, Major Amr

Abdel Rahman Ali, a native and citizen of Egypt, was admitted to the United States at

Washington Dulles International Airport.  He was admitted pursuant to an A-2 non-immigrant

visa to attend the United States Army Logistics Management College ("USALMC") at Fort Lee,

Virginia.  On October 8, 2004, after completing the USALMC course, petitioner was escorted by

United States Army military personnel to Richmond International Airport where he was to board

a flight for his return to Egypt.  He did not board the flight, choosing instead to remain in the

United States illegally.  He made this choice, it appears, because during the USALMC course he

met and commenced a romantic relationship with Ms. Kelly Stine, a United States citizen, and he

wished to stay with her in this country.  Consistent with this desire to remain here, petitioner then

---

[2]*Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (holding that under 8 U.S.C. § 1231(a)(6) a six-month post-removal order detention period is presumptively reasonable).

[3]*Id.* at 701 (holding that after the six-month presumptively reasonable period, confinement must end if the alien provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future").

submitted his resignation to the Egyptian military.  His attempt to resign was rejected, and indeed, Egypt has classified petitioner as a deserter.

In early October 2004, petitioner and Ms. Kelly Stine began living together in Ms. Stine's home in Winchester, Virginia.  On November 8, 2004, the couple married.[4]  On the same day, petitioner was detained by ICE for overstaying his non-immigrant visa, in violation of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227 (a)(1)(C)(I) (allowing deportation of "[a]ny alien who was admitted as a nonimmigrant and who has failed to . . . comply with the conditions of any such status").  Petitioner has been detained since that time.

On November 24, 2004, the DHS commenced removal proceedings against petitioner. He was held in ICE custody, without bond, pending his removal proceeding.  On January 18, 2005, an Immigration Judge ("IJ") granted petitioner's request for a bond redetermination, setting bond at $15,000 and ordering petitioner's release from detention.  ICE then filed a Notice of Intent to Appeal Custody Redetermination, which automatically stayed the IJ's redetermination decision.[5]  ICE also appealed the IJ's custody redetermination to the Board of Immigration Appeals ("BIA").

During the pendency of the appeal, petitioner was arrested by Virginia authorities and charged with bigamy.  He was accordingly taken into custody by the Virginia Department of

--------

[4]Petitioner was married three times in Egypt, and there is a dispute as to whether he lawfully divorced his third wife before his fourth marriage to Ms. Stine.  This dispute is not material to the claims presented here.

[5]Under 8 C.F.R. § 1003.19(i)(2), an IJ's decision to release an alien "shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EIOR-43)" within one business day of the issuance of the IJ's order.  This automatic stay holds the IJ's decision in abeyance pending the BIA's decision on appeal.  *Id.*

Corrections.  ICE then withdrew its appeal of the bond decision for lack of jurisdiction, pending the outcome of petitioner's state criminal case.  On April 20, 2005, the Commonwealth of Virginia entered an order of *nolle prosequi* and petitioner was released from Virginia's custody and returned to ICE custody.  A week later, on April 28, 2005, ICE issued a new custody determination ordering that petitioner be detained pending removal.  Then, on May 10, 2005, petitioner was indicted by the Commonwealth of Virginia for making false statements under oath concerning the number of his previous marriages.  On June 1, 2005, petitioner posted bond on this charge and was again detained in ICE custody.

Less than a week later, on June 7, 2005, the IJ affirmed his earlier bond redetermination and ordered petitioner released on $15,000 bond.  The following day, June 8, 2005,  ICE filed a second Notice of Intent to Appeal the IJ's custody redetermination, which automatically stayed the IJ's order.  *See supra*, at n.5.  On June 9, 2005, ICE appealed the IJ's bond redetermination to the BIA.  Thereafter, on June 20, 2005, petitioner also appealed the IJ's June 7 bond order, arguing that the IJ's January 2005 bond order remained in effect and that he was entitled to immediate release from custody because ICE withdrew its earlier appeal of the January 2005 bond order.

In the meantime, petitioner's criminal case ran its course.  On August 29, 2005, he was acquitted of the false statement charges, but remained in ICE custody nonetheless.

Shortly thereafter, on September 1, 2005, petitioner filed a request for relief from removal with the Immigration Court.  Petitioner requested (i) asylum; (ii) withholding of removal under INA § 241(b)(3) (restricting removal to a country where the alien's life or freedom would be

4

threatened because of the alien's race, religion, nationality, membership in a particular social

group, or political opinion); and (iii) withholding of removal under CAT, which, *inter alia*,

prohibits removal of an individual to a country where he would be subject to torture.

Then, on September 14, 2005, the BIA vacated the IJ's January 2005 bond

redetermination, concluding that petitioner was too significant a flight risk to merit release on

bond.  In reaching this conclusion, the BIA cited petitioner's "failure to comply with the terms of

his non-immigrant visa, his lack of candor regarding his previous marriages, his failure to inform

U.S. military personnel regarding his decision not to return to Egypt, his inability to corroborate

his current status within the Egyptian military, and his lack of apparent relief from removal."

On December 6, 2005, the IJ reviewed petitioner's claims for relief from removal.  As an

initial matter, the IJ ruled that petitioner was subject to removal for overstaying his non-

immigrant visa.  Turning to the relief requested, the IJ decided petitioner had not established

either past persecution, or a well-founded fear of future persecution, on account of a protected

ground, and thus denied petitioner's application for asylum and withholding of removal under

INA § 241(b)(3).  As to petitioner's CAT claim, the IJ found that it was more likely than not that,

if returned to Egypt, petitioner would be detained and tortured both to punish him for deserting

the Egyptian army and to extract information regarding what he might have revealed to United

States officials.  Both parties appealed the IJ's decision: Petitioner sought reversal of the IJ's

denial of asylum and ICE sought reversal of the IJ's grant of CAT relief.

On December 13, 2005, the BIA denied petitioner's request for reconsideration of its

September 14, 2005 decision vacating the IJ's bond redetermination, citing petitioner's "failure

to establish a substantial likelihood that he will be afforded relief from removal." Thus, on December 15, 2005, petitioner requested a new bond hearing before the IJ because he had been granted relief from removal under the CAT. On December 27, 2005, the IJ granted petitioner's request and ordered his release on $15,000 bond. ICE, then, filed its third Notice of Intent to Appeal the IJ's custody redetermination, which automatically stayed the IJ's order. *See supra*, at n.5. On January 5, 2006, ICE filed an appeal with the BIA.

Thereafter, on March 9, 2006, petitioner filed here an Emergency Request for Hearing on Petition for Writ of Habeas Corpus, challenging the constitutionality of his detention under the automatic stay provision. A hearing on petitioner's habeas petition was held on March 17, 2006. On May 5, 2006, petitioner provided notice of two BIA decisions in his case: (i) on May 2, 2006, the BIA affirmed the IJ's decision granting petitioner withholding of removal to Egypt under the CAT and denying petitioner's asylum application and (ii) on May 4, 2006, the BIA also dismissed respondents' appeal of the IJ's decision granting petitioner bond. The BIA's decisions collectively established that petitioner was removable, but could not be removed to Egypt pursuant to the CAT, and that petitioner could be released on bond. Thus, after the BIA's decisions, petitioner's detention was effected pursuant to a *post-removal* order of detention. Accordingly, by Order dated May 15, 2006, petitioner's challenge to the automatic stay provision, which governs pre-removal detention, was denied as moot. *Ali v. Barlow*, 1:06cv258 (May 15, 2006) (Order). Left unresolved, however, and now at issue, is the portion of petitioner's habeas petition challenging the legality of his post-removal confinement in light of the Supreme Court's decision in *Zadvydas*. Respondents contend that petitioner's claim is

unexhausted, unripe, and meritless.  The matter has now been fully briefed and argued and is

ready for disposition.

## II.

The threshold question is whether petitioner failed to exhaust his administrative remedies

pursuant to 8 C.F.R. § 241.13.  In response to *Zadvydas*, the former Immigration and

Naturalization Service[6] promulgated regulations establishing a special custody review procedure

that effectively codifies *Zadvydas*.  *See* 8 C.F.R. § 241.13(a).  Specifically, the regulations

establish that, after a final order of removal is entered, the alien may commence the custody

review process by submitting a request and presenting evidence, which ICE reviews to determine

whether there is no significant likelihood that the alien will be removed in the reasonably

foreseeable future.  *Id.* at § 241.13(c)-(d).  If ICE determines that there is no significant

likelihood of removal in the reasonably foreseeable future, then, as required by *Zadvydas*, absent

special circumstances, the alien should be released subject to appropriate conditions.  *Id.* at §

241.13(g)(1).  On the other hand, if ICE determines there is a significant likelihood that the alien

will be removed in the reasonably foreseeable future, it must deny the alien's request for relief.

*Id.* at § 241.13(g)(2).  Significantly, the regulations note that there is no administrative appeal of

a decision denying an alien's request for relief.  *Id.*

---

[6]On March 1, 2003, the INS's administrative, service, and enforcement functions were transferred to the newly-established DHS.  Pursuant to the reorganization, ICE assumed the INS's detention, removal, enforcement, and investigative functions.  *See* 8 U.S.C. § 1551, Historical and Statutory Notes; Homeland Security Act, Pub. L. No. 107-296, 116 Stat. 2135.

Respondents assert that petitioner must give ICE an opportunity to rule on petitioner's custody review request, after which time petitioner may file a habeas petition challenging his continued detention. Petitioner responds that exhaustion is not required where the administrative body has predetermined the issue before it, thereby rendering exhaustion futile. *See Galvez v. Lewis*, 56 F. Supp. 2d 637, 644 (1999) (holding that "exhaustion of administrative remedies is not required here primarily based on the fact that an appeal of this issue to the BIA appears to be futile").

Events have overtaken and mooted this issue. Since the parties filed their briefs, petitioner requested and received a custody review proceeding pursuant to 8 C.F.R. § 241.13. As a result, ICE determined that it would not release petitioner from custody "based on a review of [petitioner's] file and/or [his] personal interview and consideration of any information [he] submitted to ICE's reviewing officials." ICE further concluded that "[d]ue to the fact that [petitioner] has proven [his] unwillingness to leave the United States by lying to the United States Army about [his] intentions and refusing to leave as promised, ICE believes that [he] pose[s] a significant risk of flight if released." Given that ICE has now had an opportunity to rule on petitioner's custody review request, petitioner has exhausted his administrative remedies.

### III.

Next, respondents argue that because petitioner has not been in post-removal custody for six months – the presumptively reasonable period under *Zadvydas* – the petition is not ripe for review. *See* 533 U.S. at 701. Petitioner does not dispute that he has been in post-removal custody for less than six months, but nonetheless argues that *Zadvydas'* six month presumption is

8

just that – a presumption – and that the length of petitioner's pre- and post-removal detention, which is now approaching 22 months, coupled with the fact that he has been granted CAT relief preventing his removal to Egypt is sufficient to rebut the presumption of reasonableness.   This argument fails.

     Under 8 U.S.C. § 1231(a), once an alien is ordered removed, the Attorney General has a ninety-day period – the removal period – within which to remove the alien.  The removal period begins to run on the latest of the following:

    (i)      The date the order of removal becomes administratively final.

    (ii)     If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

    (iii)     If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

    8 U.S.C. §  1231(a)(1)(B).

During the removal period, continued detention is not only appropriate; it is statutorily required. 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien."). The statute also provides that aliens may be detained beyond the ninety-day removal period if the alien is removable for, *inter alia*, failing to comply with the conditions of a non-immigrant visa. *Id.* at § 1231(a)(6).  In *Zadvydas*, the Supreme Court interpreted the post-removal provision of § 1231 to include a presumptively reasonable detention period of six months.  533 U.S. at 701 (stating that "*after* this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing") (emphasis added).

9

In this case, the removal period began to run on May 2, 2006, when the order of removal and grant of CAT relief became administratively final. *See* 8 U.S.C. § 1231(a)(1)(B)(I). Accordingly, petitioner's ninety-day removal period expired on July 31, 2006, and the six month presumptively reasonable post-removal period will expire on October 29, 2006. Thus, petitioner's habeas petition is premature.

Importantly, courts are consistent in their dismissal of claims made prior to the expiration of the six-month presumptively reasonable period. *See, e.g., Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (finding that the "six-month period thus must have expired at the time Akinwale's § 2241 petition was filed in order to state a claim under *Zadvydas*"); *Morena v. Gonzales*, No. 4:CV-05-0895, 2005 U.S. Dist. LEXIS 37989, at *19 (M.D. Pa. 2005) (finding "that since Petitioner's six-month presumptive detention period has not yet expired in this case, he has not stated a claim under *Zadvydas*"); *Uyur v. Hogan*, No. 3:06-CV-1277, 2006 U.S. Dist. LEXIS 52463, at *4 (M.D. Pa. 2006) (same). Thus, petitioner's habeas claim is not yet ripe and must be dismissed. Petitioner may, of course, reassert his claim after the six-month presumptively reasonable period expires. *See Joseph v. Chertoff*, No. 06-0520, 2006 U.S. Dist. LEXIS 44817, at *12 (D.N.J. 2006) (unpublished) (noting that after the expiration of petitioner's six-month presumptively reasonable post-removal detention period, "[p]etitioner is free to file another § 2241 petition should . . . [he] develop [a] good evidence-based reason to believe that his removal is no longer reasonably foreseeable").

**III.**

Although petitioner's claim is not yet ripe, it is worth noting that, even assuming

ripeness, his *Zadvydas* challenge would fail because he has not met his burden to show that there is no significant likelihood of removal in the foreseeable future.  In *Zadvydas*, the Supreme Court interpreted the post-removal detention provision of 8 U.S.C. § 1231 to include a presumptively reasonable detention period of six months.  533 U.S. at 701.  In reaching this result, the Supreme Court explained that the six-month presumption does not mean that every alien must automatically be released at the end of six months; rather, the Supreme Court made clear that confinement may continue beyond the six-month period until "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*  Thus, under *Zadvydas*, an alien detained while awaiting removal cannot obtain habeas relief from confinement unless he meets a two prong standard.  First, the alien must show (i) that he is being held beyond the presumptively reasonable six-month period and (ii) that there is no significant likelihood of removal in the foreseeable future.  *Id.*  Then, if the alien makes these *prima facie* showings, the burden shifts to the government to provide evidence to rebut them.  *Id.*

Petitioner claims that he is entitled to relief under *Zadvydas* because he has been in DHS custody since November 8, 2004, and the BIA's grant of CAT relief makes his removal "improbable."  As to the first prong, petitioner points to his pre-removal detention, arguing that the total length of his detention is sufficient to state a claim under *Zadvydas*.  As to the second prong – no significant likelihood of removal in the foreseeable future – petitioner claims that removal is unlikely because (i) his grant of  CAT relief precludes removal to Egypt; (ii) he lacks meaningful ties to any third country, thus, making removal to any other country unlikely; and (iii) he is married to a United States citizen who has filed a visa petition on his behalf.

11

Respondents agree that petitioner cannot be removed to Egypt, but point out that while removal was precluded during the pendency of petitioner's appeal, ICE has been actively pursuing petitioner's removal to a third country since the disposition of the appeal. To that end, an ICE officer interviewed petitioner to determine potential third countries for his removal. Moreover, it appears petitioner is fully cooperating with ICE's efforts to obtain permission for him to travel to a democratic country where he will not face the prospect of torture. Finally, it is also worth noting that while petitioner's wife has sought a visa for petitioner, it has been denied by the Citizenship and Immigration Service and is pending appeal.

Given these facts, petitioner's *Zadvydas* claim, even if ripe, would fail on both prongs. First, as explained above, *Zadvydas* makes clear that the relevant period of detention is *post*-removal detention. Although petitioner may have been in *pre*-removal custody for 19 months, he has only been in *post*-removal detention for approximately three months. Thus, petitioner has not been in custody beyond the presumptively reasonable six-month period provided in *Zadvydas*. Second, petitioner has not met his burden to show that there is no significant likelihood of removal in the foreseeable future. As respondents point out, and petitioner does not contest, ICE is taking active steps to secure petitioner's removal including (i) interviewing petitioner to identify an appropriate country to which petitioner can be removed; (ii) obtaining petitioner's permission to travel to a third country; and (iii) requesting diplomatic assistance from the U.S. Department of State to secure petitioner's removal to a third country. Petitioner has provided no evidence, beyond his own assertions, to show that removal is not significantly likely. Based on ICE's efforts, and the fact that the presumptively reasonable post-removal detention

period has not yet expired, the current record compels the conclusion that petitioner has not met

his burden to show that removal is not significantly likely in the foreseeable future.  Accordingly,

petitioner's habeas petition must be dismissed.

      An appropriate Order will issue.


                                          _____/s/_____

Alexandria, Virginia                                T. S. Ellis, III
August 28, 2006                                United States District Judge